**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| | : | |
| | : | |
| **v.** | : | **No. 12-CR-0190-1** |
| | : | |
| **ANDREW BOGDANOFF** | : | |
| **#68251-066** | : | |
| **FCI TERMINAL ISLAND** | : | |
| **1299 SEASIDE AVENUE** | : | |
| **SAN PEDRO, CA.  90731** | : | |
| | : | |
| | : | |

**Goldberg, J.**                                                                                    **May 8, 2020**

## MEMORANDUM OPINION

Defendant Andrew Bogdanoff, a 73-year-old federal inmate has tested positive for COVID-19, which he contracted at FCI Terminal City, a facility currently overrun by the virus. Based on these and other factors, Bogdanoff requests compassionate release pursuant to 18 U.S.C. § 3582(c), claiming that extraordinary and compelling reasons exist, which warrant him serving the remaining eleven-plus years of his eighteen-year sentence in home confinement.

Bogdanoff's situation is extremely disconcerting.  Unfortunately his medical condition is not the only factor I am obligated to consider under § 3582(c).  And currently, those factors require that I deny Bogdanoff's release request.

1

I.      **BACKGROUND**

A.  **Bogdanoff's Conviction and Sentence**

 Bogdanoff's incarceration stems from a financial scheme that he orchestrated from 2005 through 2011, wherein he defrauded over 250 victims out of $26,049,893.[1]   This was Bogdanoff's only conviction.

On April 24, 2014, the Honorable William H. Yohn, Jr., now retired, imposed a term of 220 months of imprisonment.  (ECF No. 283.)  On October 15, 2015 this case was transferred to my docket.  It is undisputed that Bogdanoff has been in federal custody since April 25, 2013, has an expected release date of April 14, 2029, and has only served seven years of his over eighteen-year sentence.

Bogdanoff is housed at FCI Terminal City, where 618 inmates and 15 staff members have tested positive for COVID-19 and six inmates have died.  See Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited May 8, 2020).  As reflected on the Bureau of Prisons ("BOP") website, this facility has the highest number of inmate infections in the country.

B.  **Bogdanoff's Motion for Modification of Sentence**

Bogdanoff is 73 years old and suffers from atrial fibrillation and/or heart arrhythmia, a condition associated with an irregular heart rate.  On April 24, 2020, Bogdanoff tested positive for the COVID-19 virus and is currently quarantined.  In his compassionate release motion, Bogdanoff argues that his age, medical condition, and continued confinement at FCI Terminal

---

[1]      On August 29, 2013, Bogdanoff pled guilty to: (1) Conspiracy to Commit Mail and Wire Fraud, 18 U.S.C. § 371; (2) Mail Fraud and Aiding and Abetting, 18 U.S.C. §§ 1341 and 2; (3) Wire Fraud and Aiding and Abetting, 18 U.S.C. §§ 1343 and 2; (4) Money Laundering and Aiding and Abetting, 18 U.S.C. § 1957; (5) Conspiracy to Defraud the United States, 18 U.S.C. §371 and 26 U.S.C. §7206(1); and (6) Filing False Tax Returns, 26 U.S.C. §7206(1).  (ECF No. 164.)

City place him at a significant risk.  He requests that I grant home confinement at his son's house in Arizona or either of his two daughters' homes in Oregon.

During the May 6, 2020 telephonic hearing, the Government relayed that, as of May 5, 2020, BOP officials examine Bogdanoff every day, take his temperature, and report that thus far he is asymptomatic.  Bogdanoff's counsel has indicated that he has attempted to contact officials at FCI Terminal City to verify his client's condition but despite repeated efforts, he has received no information.  Counsel's frustration is understandable.

As detailed below, pursuant to 18 U.S.C. § 3582(c), compassionate release motions require that a defendant exhaust his requested relief with the institution and/or warden of the institution and wait thirty days for action or inaction of the facility before seeking relief from the District Court.  Bogdanoff's counsel has been unable to discern what, if any, requests have been made by his client within the facility.

Separate and apart from Bogdanoff's compassionate release request, the Government reports that the BOP has begun the process of evaluating Bogdanoff for home confinement.  This evaluation is being conducted as part of the BOP's "overall review of all inmates to determine those who qualified for such placement pursuant to the Attorney General's memo[s] of March 26 and April 3, 2020."[2]  (April 30, 2020 Email at 4, ECF No. 420.)  According to the Government,

---

[2]  On March 26, 2020, United States Attorney General William Barr issued a memorandum directing BOP to assess all inmates to identify the most vulnerable and non-violent that would be appropriate for transfer to home confinement to avoid spread of the COVID-19 pandemic. (March 26, 2020 at 1, ECF No. 410-3.)  The Attorney General set forth various factors to guide the assessment, including the age and vulnerability of the inmate to COVID-19, security level of the facility currently housing the inmate, the inmate's crime of conviction, the inmate's conduct in prison, whether the inmate demonstrated a verified a re-entry plan that will prevent recidivism and maximize public safety, including verifying whether the conditions under which an inmate would be confined upon release would present a lower risk of contracting COVID-19 than in the BOP facility, and the danger posed by the inmate to society.  (Id.)  The Attorney General stressed the BOP's obligation to protect the public and to avoid spreading COVID-19 to the public.  (Id. at 2.)  Thereafter, on April 3, 2020, the Attorney General issued a second memorandum

this review was conducted in accordance with 18 U.S.C. §§ 3621(b) and 3624, under which the

BOP is afforded discretion on where to place inmates, which could include home confinement.[3]

(May 1, 2020 Email at 2, ECF No. 420.)

   Bogdanoff's counsel represents that, based upon information he received from his

client's family, he believes this evaluation commenced on April 17, 2020.  The Government did

not dispute this representation.  BOP counsel has indicated that as of May 1, 2020, the BOP's

review was not yet complete.  (May 1, 2020 Email at 2, ECF No. 420.)  During the May 6, 2020

telephonic hearing, the Government could not supply any further information regarding the

status of the BOP's review of Bogdanoff for possible home confinement.

   Given all of the above, the Government has agreed that for purposes of the thirty-day

administrative requirement under § 3582 (c), April 17, 2020 is the operative start date.

## II.     THE FIRST STEP ACT – COMPASSIONATE RELEASE

   The First Step Act permits courts to reduce a term of imprisonment upon a defendant's

motion for compassionate release "after the defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or

after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's

facility," whichever is earlier.  18 U.S.C. § 3582(c)(1)(A).  The United States Court of Appeals

for the Third Circuit recently determined that this thirty-day requirement is mandatory and that a

indicating that, since the enactment of the Coronavirus Aid, Relief, and Economic Security Act,
("CARES Act"), Pub. L. 116-136, § 12003, he was authorized to expand the cohort of inmates to
be considered for home release upon his finding that emergency conditions materially affect the
function of the prisons.  (April 3, 2020 Memorandum at 1, ECF No. 410-2.)  The Attorney
General directed the review of all inmates who had COVID19 risk factors, especially at prisons
where COVID-19 is materially affecting operations.  (Id. at 2.)  He instructed the BOP to utilize
the factors set forth in his March 23, 2020 memorandum and authorized home confinement even
if electronic monitoring is not available.  (Id.)

[3]     Pursuant to 18 U.S.C. §§ 3621(b) and 3624, the BOP's designation of a place of
imprisonment "is not reviewable in any court."  18 U.S.C. § 3621(b).

defendant's failure to exhaust his administrative remedies "presents a glaring roadblock foreclosing compassionate release[.]"  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The Third Circuit directed that there must be "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement[.]"  Id.

Once a defendant's administrative remedies are exhausted, a court may grant compassionate release based upon:  consideration of the factors set forth in 18 U.S.C. § 3553(a); a finding that "extraordinary and compelling reasons warrant such a reduction"; and a determination that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The applicable policy statement of the Sentencing Commission is found at U.S.S.G. § 1B1.13, in which the commentary states:

> 1. Extraordinary and Compelling Reasons.–Provided the defendant meets the requirements of subdivision (2) [not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) Medical Condition of the Defendant.–
> >
> > > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> > >
> > > (ii) The defendant is—
> > >
> > > > (I)   suffering from a serious physical or medical condition,
> > > > (II)  suffering from a serious functional or cognitive impairment, or
> > > > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13.

## III.   ANALYSIS

In order to consider Bogdanoff's request to modify the terms of his imprisonment, I must first find that he exhausted his administrative appeals within FCI Terminal City.  To do so, thirty days must have passed from either the date of a decision by FCI Terminal City's warden on Bogdanoff's request for compassion release or upon the expiration of 30 days from warden's receipt of such request.  Raia, 954 F.3d at 597; United States v. Rodriguez, No. 03-00271, 2020 WL 1627331, at *5 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

Stating what is painfully obvious to all, we are operating in a difficult time where obtaining information, especially from a correctional facility dealing with a massive outbreak of the COVID-19 virus, is extremely difficult.  So it is no surprise that the record before me is not entirely clear regarding the start date under 18 U.S.C. § 3582(c)(1)(A).

Bogdanoff's counsel represents that, despite numerous attempts to contact FCI Terminal City beginning on either April 13 or 14, 2020, he has been unable to reach anyone at the facility. During the telephonic hearing, counsel further indicated that he learned that Bogdanoff was interviewed by the BOP on April 17, 2020 for a possible transfer to home confinement. Nonetheless, there is no evidence presently before me establishing that a request for compassionate release was made to the facility's warden at that time.  And the Government does not agree that Bogdanoff's filing of his motion for compassionate release with this Court on April 15, 2020 constitutes a request to the warden triggering the thirty days.

As noted above, the Government agrees that April 17, 2020 marks the beginning date for the thirty-day exhaustion requirement.  Because there is a clear indication that FCI Terminal City was, in fact, considering Bogdanoff for transfer to home confinement on this date, I find that

April 17, 2020 is the date that a request was made to "the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).

Employing the April 17 date, I find that Bogdanoff has not yet exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).  Bogdanoff's counsel urges that I find that the thirty days has run and that I employ a futility exception to the mandates of the First Step Act's thirty-day exhaustion requirement.  In support, counsel reiterates that he has been unable to contact FCI Terminal City since he first began reaching out on either April 13 or 14, 2020.  Thus, he argues that because his earlier attempts to contact the prison were futile, those attempts should trigger the beginning date for exhaustion.

This argument has been rejected by courts within this Circuit, who have found that there is no authority to carve out such an exception to a statutorily-mandated exhaustion requirement. For example, in denying a motion for compassionate release based on the defendant's failure to exhaust, the court in United States v. Epstein, No. 14-287, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) noted that:

> While United States v. Raia, [954 F.3d 594, 597 (3d Cir. 2020)] did not specifically address whether the [First Step Act]'s exhaustion requirement may be subject to judicially created exceptions, it is implicit in the circuit court's decision, since it refused to remand the case to the district court to consider the request for compassionate release, because "any remand would be futile," based upon the failure to exhaust.  Indeed, the Third Circuit's strong language regarding exhaustion leaves no wiggle room.

Id. at *3 (citation omitted); see also United States v. Petrossi, No. 17-192, 2020 WL 1865758, at *4 (M.D. Pa. Apr. 14, 2020) (agreeing that Raia bars "a judge-created exception to the statute's exhaustion requirement").  I agree with the rationale and holdings in these cases.

When Congress enacts a statutory exhaustion provision, "courts have a role in creating exceptions only if Congress wants them to."  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016).  "For

that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. Thus, even if Bogdanoff's suggested futility exception to the exhaustion requirement of 18 U.S.C. § 3582 were appropriate, I lack authority to apply such an exception.

Because Bogdanoff failed to exhaust his administrative remedies, I currently lack jurisdiction to rule on his request for compassionate release under 18 U.S.C. § 3582. The earliest I would be vested with jurisdiction would be on May 17, 2020. Bogdanoff may reinstitute his motion at that time. But I note briefly here that even if reinstituted, Bogdanoff faces significant hurdles.

Much has been written about the devastating impact that the COVID-19 pandemic has had on the prison population that need not be repeated here. And unfortunately, Bogdanoff, although presently asymptomatic, has tested positive. It is certainty true that COVID-19 can have a greater effect on older individuals with heart conditions, such as Bogdanoff. The Honorable Mark A. Kearney has summarized medical information on this issue provided by the Center for Disease Control ("CDC"):

> People over age sixty-five and those of any age with serious underlying medical conditions may be at higher risk for severe illness from COVID-19, including those with heart disease . . . The CDC explains why those suffering from heart disease . . . may be at a higher risk for severe illness from COVID-19. Concerning heart disease, the CDC explains: "COVID-19, like other viral illnesses such as the flu, can damage the respiratory system and make it harder for your heart to work. For people with heart failure and other serious heart conditions this can lead to a worsening of COVID-19 symptoms."

United States v. Ladson, No. 04-697-MAK (E.D. Pa. April 27, 2020) (citing Centers for Disease Control and Prevention, "Cases of Coronavirus Disease (COVID-19) in the U.S.," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.)

While Bogdanoff has tested positive, he has also been in quarantine for the last fourteen

days and has remained asymptomatic.  Counsel has not presented any evidence about how Bogdanoff's heart issues, in conjunction with his positive, yet asymptomatic, case of COVID-19 meet the requirements of U.S.S.G. § 1B1.13 and 18 U.S.C. § 3582(c)(1)(A) in establishing that Bogdanoff is suffering from a "terminal illness" or that he is suffering from a serious physical or mental condition which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   U.S.S.G. § 1B1.13; United States v. Russo, 16-441, 2020 WL 1862294 at *8 (S.D.N.Y. April 14, 2020) (denying a motion for compassionate release where the inmate contracted the virus, noting that there was no suggestion that the inmate's condition was terminal and recognizing that the prison was monitoring him daily).

Here, BOP officials are monitoring Bogdanoff daily, taking his temperature each day, and continue to report that he remains asymptomatic.  Today marks the final day of his recommended fourteen-day quarantine period.  Without information as to his status after the completion of his final day in quarantine, I cannot yet conclude that he—or other federal prisoners—would be made safer by his immediate transfer to home confinement.  Russo, 2020 WL 1862294 at *8 (denying a motion for compassionate release by a defendant that had contracted the virus because he had not yet cleared the fourteen-day quarantine period).

I also note that several of the 18 U.S.C. § 3553(a) factors may weigh against Bogdanoff's transfer to home to confinement.  While his crimes were not violent and marked his first conviction, Bogdanoff's actions were egregious in that he defrauded over 250 victims out of an astounding $26,049,893.  See 18 U.S.C. §§ 3553(a)(1) and (2) (the nature and circumstances of the offense and need for the sentence imposed to reflect the seriousness of offense).  Reducing a sentence by almost two-thirds could also have an impact on the public's respect for the law and

9

deterrence.  18 U.S.C. §§3553(a)(2)(A) and (B).  While I have no evidence that he will repeat this conduct, I also have no information about Bogdanoff's conduct while incarcerated beyond his conclusory statement that he "has been rehabilitated."  (Def.'s Mot. at 11, ECF No. 410.)  As such, and in light of these § 3553(a) factors, reducing his sentence could undermine the need to promote deterrence of other large-scale financial crimes.

I also note that in only having served seven of his eighteen-year sentence, this case is much different than others where defendants are at the end of their sentence.  See United States v. Foster, No. 14-324-2-JEJ (M.D. Pa. Apr. 3, 2020) (granting a motion for compassionate release where forty-five days remained on a sixty-month sentence, in which the defendant served over half of the sentence in a federal facility); see also United States v. Powell, No. 94-0316-ESH (D.D.C. Mar. 28, 2020) (granting a motion for compassionate release where only three months remained on a 262-month sentence); United States v. Campagna, No. 16-78-1, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) (granting a motion for compassionate release where only four months remained on a forty-month sentence).

I also must consider whether Bogdanoff poses a danger to the community, both through his past criminal history and his current positive diagnosis.  Bogdanoff has proposed a plan of home confinement in either his son's or daughters' homes, in which he agrees to remain confined, except for medical visits.  Without additional information or verification that such residences are appropriate, I cannot summarily accept this proposal.  And I must also consider how such restrictions will be enforced.

Nonetheless, because the thirty-day administrative period has not run, these are considerations for another day should Bogdanoff renew his motion.

**IV.    CONCLUSION**

Currently, I lack the jurisdiction to rule on the merits of Bogdanoff's compassionate release motion.  Therefore, I will deny his request without prejudice to re-file in accordance with my ruling herein.

An appropriate Order follows.